IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| LEXINGTON INSURANCE CO., ) |
| as subrogee of ) |
| AEW CAPITAL MANAGEMENT, LP, ) |
| ) |
| Plaintiff, ) |
| ) |
| v.                                       )        06-2847-STA |
| ) |
| LINDSEY NICOLE TUBBS, ) |
| ) |
| Defendant. ) |

---

## ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION TO DISMISS AS DISCOVERY SANCTION

---

Before the Court is Defendant Lindsey Nicole Tubbs' Motion to Dismiss (D.E. # 37) filed on February 26, 2009. Plaintiff has responded in opposition. For the reasons set forth below, the Motion is **GRANTED IN PART, DENIED IN PART**.

### BACKGROUND

Defendant has stated the following as the undisputed facts in this matter. A fire occurred on April 4, 2004, at the Radisson Hotel in Memphis, Tennessee ("the hotel"). Def.'s Statement of Undisputed Facts ¶ 1. The fire originated in Room 502 of the hotel. *Id*. at ¶ 2. Defendant was the sole registered guest in Room 502 of the hotel on April 4, 2004. *Id*. at ¶ 3. Plaintiff alleges that the fire was proximately caused by Defendant's negligence in connection with smoking materials that were used in Room 502 at the hotel. *Id*. at ¶ 4. Plaintiff's expert witnesses opine that the fire originated in the back cushion of a chair in Room 502 where a

1

smoldering cigarette ignited the fire. *Id*. at ¶ 5. Defendant's expert witness opines that the fire was caused by a faulty, defective, or overheated halogen lamp that was near the chair in Room 502. *Id*. at ¶ 6. Defendant's expert witness cannot substantiate his opinion regarding the cause of the fire and cannot disprove Plaintiff's expert witnesses' opinions of the cause of the fire without inspecting the chair and the lamp from Room 502. *Id*. at ¶ 7. Plaintiff cannot produce the chair or lamp from Room 502 despite Defendant's request for production and inspection of both items. *Id*. at ¶ 8. Defendant avers that Plaintiff had possession and custody of the chair and lamp and permitted one of its expert to examine both in reaching his conclusions about the origin of the fire. Def.'s Mot. Dismiss, Feb. 26, 2009, 5. Defendant argues that Tennessee's law on spoliation requires dismissal under the circumstances.

While Plaintiff does not deny the material facts as stated by Defendant in the Motion, Plaintiff does offer additional evidence in opposition to the Motion. Plaintiff explains that it insured the hotel for AEW Capital Management, L.P. Pl.'s Resp., Mar. 25, 2009, 1. According to Plaintiff, Defendant checked into the room at approximately 8:30 P.M. on April 2, 2004. *Id*. A fire broke out in Room 502 shortly before midnight on the night of April 3, 2004, which triggered the hotel's fire alarm and sprinkler system. *Id*. When the Memphis Fire Department ("MFD") responded, firefighters discovered empty beer cans and smoking materials in the area of Room 502 where the fire started. *Id*. at 2. Fire investigators determined that careless smoking was the cause of the fire. *Id*. Belfor, Inc. ("Belfor") is a remediation company that was hired to repair the damage to the hotel. *Id*. According to Plaintiff, Belfor removed the chair and lamp from the scene and stored them. *Id*. Room 502 and the chair and lamp were photographed prior to beginning the repairs. *Id*.

2

Following the MFD investigation, Plaintiff retained an origin and cause expert named John Laton ("Laton") to report on the cause of the fire. *Id*. Laton's report is dated April 29, 2004, less than four weeks after the fire. *Id*., ex. 2. Laton had the opportunity to inspect the scene as well as the chair and lamp and opined that the fire was caused by the careless disposal of smoking materials. *Id*. In his expert report ("the Laton report"), Laton was able to rule out all electrical sources within the area of origin as causes of the fire. *Id*. Laton concluded that the burn patterns on the chair indicated that the fire originated in the corner cushion of the chair. *Id*.

After the Laton report, Plaintiff retained a second expert E. Metts Hardy to investigate. *Id*. The Hardy report is dated January 14, 2008. *Id*., ex. 3. The chair and lamp were no longer available when Hardy conducted his investigation. *Id*. Plaintiff fails to account for how the chair and lamp came to be unavailable for inspection other than to state that it "did not engage in any actions intended to deprive the Defendant of an opportunity to examine the evidence." *Id*. at 7. Hardy was left to rely only on the photographs of the scene, the depositions of Defendant and other witnesses, the MFD report, the Laton report, and data from learned treatises. *Id*. at 2-3. Hardy ruled out all electrical sources within the area of origin and the lamp as causes for the fire. *Id*. at 3. Hardy concluded that the fire was started by the careless disposal of smoking materials which ignited the back cushion of the chair. *Id*.

Plaintiff argues that pursuant to Tennessee law, dismissal is too harsh a sanction under the circumstances. Plaintiff denies any intentional conduct to deprive Defendant of the chance to inspect the chair and lamp. Plaintiff further argues that Defendant has not suffered any actual prejudice as a result of the spoliation and asserts that Defendant will still be able to present her own evidence and advance her own theory about the fire. According to Plaintiff, Defendant

should have reasonably anticipated litigation over the fire and could have notified her insurance carrier much earlier.   Plaintiff suggests that Defendant still has access to adequate information to mount her defense: the photographs taken by Plaintiff's expert and the MFD during their investigations; the independent report prepared by MFD; Defendant's own and other eyewitness accounts and depositions regarding the events leading up to the April 3, 2004 loss; and interviews of Belfor employees in possession of the chair and lamp prior to its disposal.  These were the same sources available to Plaintiff's expert Hardy and upon which he formed the opinion offered in his report.  Plaintiff argues that Defendant's expert has failed to show that he will be unable to effectively state a professional opinion.  Therefore, Plaintiff contends that the Court should consider alternative sanctions such as a rebuttable adverse inference instruction or striking the Laton report which relied on the missing evidence.

## ANALYSIS

Although neither party briefed the case, the Sixth Circuit recently ruled in *Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) that the federal law of spoliation governs cases filed in federal court.[1]  The *Adkins* court explained that "the authority to impose sanctions for spoliated evidence derives from a court's inherent power to control the judicial process."[2]  In addition, the Sixth Circuit reasoned that "a spoliation ruling is evidentiary in nature and federal courts

---

[1] *Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009); overruling *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801 (6th Cir. 1999).

[2] *Adkins*, 554 F.3d at 652 (citing *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)).

generally apply their own evidentiary rules in both federal question and diversity matters."[3] Therefore, federal law, and not the law of Tennessee, governs this issue.

Spoliation refers to the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.[4] All parties have a duty to preserve material evidence during litigation as well as during the time before the litigation when "a party reasonably should know that the evidence may be relevant to anticipated litigation."[5] Even where a party does not own or control the evidence, the party still has a duty "to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence."[6]

A district court may exercise its inherent power to control litigation where necessary "to redress conduct which abuses the judicial process" such as spoliation.[7] Spoliation sanctions are proper when "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence."[8] A district court generally has broad discretion in choosing an appropriate sanction

---

[3] *Adkins*, 554 F.3d at 652 (citing *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003)).

[4] *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir 1999) (citing *Black's Law Dictionary* 1401 (6th ed. 1990)).

[5] *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998).

[6] *Silvestri*, 271 F.3d at 591.

[7] *Chambers,* 501 U.S. at 43-45; *West*, 167 F.3d at 779-80. *See also* P.L. McGlynn, Note, *Spoliation in the Product Liability Context,* 27 U. Mem. L.Rev. 663 (1997).

[8] *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009).

for spoliation.[9] The factors to be considered when imposing sanctions include prejudice resulting from the discovery abuse, whether the non-cooperating party was warned that violations would result in sanctions, and whether the court considered less drastic sanctions.[10] The spoliating party bears the burden of establishing lack of prejudice to the opposing party, a burden the Sixth Circuit has described as "an uphill battle."[11]

Where there is actual prejudice, the sanction should serve "prophylactic, punitive, and remedial" objectives to cure the spoliation.[12] In other words, the court should employ a sanction which will achieve the following purposes: "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party."[13] The severity of the sanction should correspond to the actual prejudice suffered by the party who has been denied discovery.[14] Dismissal is an appropriate sanction if there is "a showing of willfulness, bad faith, or fault on the part of the sanctioned party."[15] However dismissal is a sanction "of last resort,"[16] a "drastic remedy" to "be

---

[9] *West*, 167 F.3d at 779.

[10] *Beil v. Lakewood Eng'g & Mfg. Co.,* 15 F.3d 546, 552 (6th Cir.1994).

[11] *Austral-Pacific Fertilizers, Ltd. v. Cooper Industries, Inc.*, 1997 WL 124097, *4 (6th Cir. 1997).

[12] *West*, 167 F.3d at 779.

[13] *Id*. (citations omitted).

[14] *Austral-Pacific Fertilizers*, 1997 WL 124097 at *3.

[15] *Id*.

[16] *Beil,* 15 F.3d at 552.

6

imposed only in extreme circumstances."[17]  A court should consider alternative sanctions, individually or in combination, which might achieve the same prophylactic, punitive, and remedial objectives.[18]  Those less drastic sanctions may include exclusion of expert testimony concerning the spoliated evidence or a jury instruction on spoliation of evidence which raises a negative inference or presumption against the spoliator.[19]

      In this case, the Court finds that spoliation has occurred and sanctions are appropriate.  However, Defendant's request for dismissal as a sanction for the spoliation of the chair and lamp is not warranted because a combination of less drastic sanctions will redress the spoliation.  As an initial matter, the Court finds that Plaintiff had a duty to preserve the chair and lamp for Defendant's inspection at all times after the events of April 3-4, 2004.  Both the chair and lamp were material to the case, which Plaintiff should have reasonably known.  Plaintiff's position is slightly more complex in this case because it is not clear that it owned or controlled the evidence after the fire.  The owner of the chair and lamp was the hotel; Plaintiff is the insurer-subrogee of the owner of the hotel.  Additionally, the chair and lamp came to be in the possession of Belfor, a company hired by the hotel to repair the damage caused by the incident, and it appears that Belfor actually discarded the evidence.  Still it is undisputed that Belfor was the agent of the hotel and that Plaintiff stepped into the shoes of the hotel with respect to any claim against Defendant.  Thus, Plaintiff stood in the position of the owner of the chair and lamp and had the

---

[17] *West*, 167 F.3d at 779.

[18] *Id*. at 779-80 (imposing three sanctions including adverse presumption instruction, barring party from presenting evidence opposing a claim, and preventing spoliating party's expert witness from testifying about spoliated evidence).

[19] *Id*. at 780.  *See also* 10A *Fed. Proc., L. Ed.* § 26:854 (2008).

authority to direct Belfor to preserve the chair and lamp. Even if Plaintiff did not own or exercise control over the chair and lamp, Plaintiff had a duty to give Defendant "notice of access to the evidence or of the possible destruction of the evidence." Therefore, the Court finds that Plaintiff had a duty to preserve the chair and lamp for this litigation and failed to do so.

Furthermore, the Court finds that Defendant has suffered actual prejudice because of the unavailability of the evidence. Plaintiff had access to the evidence from the time of the fire until the time of its disposal. Plaintiff was in a position to hire an expert who examined the hotel room itself, the chair and lamp, and completed a report all within one month of the fire in April 2004. Thus, Plaintiff had the benefit of inspecting and testing the evidence during its investigation of the causes of the fire. Defendant was denied that same opportunity by virtue of the spoliation. Plaintiff has argued that Defendant had notice of the litigation and in the exercise of due diligence could have inspected the evidence at a much earlier date. However, this does not alter the fact that Plaintiff had a duty to preserve the evidence for Plaintiff's inspection at all times during the litigation and at any time when it was reasonable to anticipate litigation, not just for some reasonable period of time after the fire. In this case, Plaintiff had the opportunity to hire one expert who had inspected the evidence and formulated his opinion in part on the examination of the chair and lamp. That investigation formed the basis for the Laton report in which Plaintiff's expert opined that the fire was caused by careless disposal of smoking materials. The Hardy report then referred to the Laton report among other sources and reached the same conclusion that the fire was caused by careless disposal of smoking materials. Defendant is left to rely largely on photographs taken of the scene and the chair and lamp by Plaintiff's expert Laton as well as the two reports written by Plaintiff's experts. As a result,

Defendant cannot adequately develop her theory of the case without relying on photographs taken by the opposing party or reports prepared by experts working for the opposing party.[20] Therefore, the spoliation has plainly prejudiced Defendant by foreclosing any independent investigation of the evidence, which is central to the case.

Having determined that Plaintiff had a duty to preserve the evidence and that Defendant has suffered actual prejudice as a result of the spoliation, the Court holds that sanctions are appropriate.  Here the Court is required to fashion a sanction that is "prophylactic, punitive, and remedial" to cure the spoliation.  The sanction should also bear some relationship to the actual prejudice suffered by Defendant who was denied the material evidence in this case.  As discussed above, the spoliation of the chair and lamp has seriously prejudiced Defendant's case and Plaintiff bears responsibility for the spoliation.  However, the Court finds that the sanction of dismissal is not warranted under the facts presented.  While neither party has explained the exact circumstances of the spoliation, or even when it occurred, it is not clear that Plaintiff acted wilfully or deliberately to destroy material evidence.  Moreover, the Court finds that a combination of lesser sanctions will achieve the three-part objectives of (1) deterring spoliation; (2) placing the risk of an erroneous judgment on Plaintiff; and (3) restoring Defendant to the same position she would have been in absent the wrongful destruction of evidence.

Therefore, the Court will impose the following sanctions on Plaintiff for its failure to preserve material evidence and for the prejudice which that spoliation has created.  First,

---

[20] It is true that MFD did create a report and take photographs of the scene.  However, there is no evidence before the Court concerning how thorough the MFD's investigation was or how it might reasonably compare to an expert analysis of the cause of the fire.  Thus, its usefulness to a origin and cause expert is unclear.

9

although this is a non-jury trial, Defendant is entitled to a negative inference against Plaintiff that the chair and lamp would have provided favorable evidence to Defendant.  Second, Plaintiff will not be permitted to produce any expert testimony on the chair and lamp, which by extension means that Plaintiff may not present expert testimony on the cause and origin of the fire in Room 502 of the hotel.  This includes both the Laton report and the Hardy report.  The Court finds that the combination of these sanctions will adequately achieve the "prophylactic, punitive, and remedial" objectives required in cases such as this one where spoliation has occurred.  Therefore, Defendant's Motion to Dismiss as a Sanction for Spoliation is **GRANTED IN PART, DENIED IN PART**.

    **IT IS SO ORDERED.**

    s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 2nd, 2009.